# Payment of Travel Costs to Witnesses During a Period of Lapsed Appropriations

Where witnesses have been ordered to appear in court during a lapse in the Department of Justice's appropriation, and lack the financial resources necessary to return home, there exists a sufficient likelihood that the witnesses' safety would be compromised by not providing them the means to return home to warrant a cash disbursement for that purpose under the Antideficiency Act, 31 U.S.C. § 665(b).

Under the interpretation of the Antideficiency Act in the Attorney General's opinion of January 16, 1981, emergency expenditures may be made during a lapse in appropriations if they are necessary to secure the safety of human life or the protection of property. The totality of circumstances must be examined and evaluated in each case to determine whether such emergency expenditures are permitted.

December 23, 1981

## MEMORANDUM OPINION FOR THE ASSISTANT ATTORNEY GENERAL, JUSTICE MANAGEMENT DIVISION

The Justice Management Division (JMD) asked this Office to advise whether disbursement of travel costs incurred by witnesses in a given set of circumstances during a lapse in appropriations would be precluded by the Antideficiency Act, 31 U.S.C. § 665.[1] Specifically, JMD asked whether disbursement of costs incurred by a witness traveling to and from the courthouse, pursuant to 28 U.S.C. § 1821(c)(Supp. II 1978),[2] would violate the Act when the witness' appearance was directed by a court order issued prior to the lapse in appropriations.

---

[1] The Antideficiency Act, 31 U.S.C § 665, provides in pertinent part:

(a) Expenditures or contract obligations in excess of funds prohibited

No officer or employee of the United States shall make or authorize an expenditure from or create or authorize an obligation under any appropriation or fund in excess of the amount available therein; nor shall any such officer or employee involve the Government in any contract or other obligation, for the payment of money for any purpose, in advance of appropriations made for such purpose, unless such contract or obligation is authorized by law.

(b) Voluntary service forbidden

No officer or employee of the United States shall accept voluntary service for the United States or employ personal service in excess of that authorized by law, except in cases of emergency involving the safety of human life or the protection of property.

[2] 28 U.S.C. § 1821(c) provides in pertinent part:

(1) A witness who travels by common carrier shall be paid for the actual expenses of travel on the basis of the means of transportation reasonably utilized and the distance necessarily traveled to and from such witness's residence by the shortest practical route in going to and returning from the place of attendance.

(2) A travel allowance equal to the mileage allowance which the Administrator of General Services has prescribed, pursuant to section 5704 of title 5, for official travel of employees of the Federal Government shall be paid to each witness who travels by privately owned vehicle.

The Antideficiency Act prohibits the United States from making expenditures or incurring contract obligations in excess of the amount of funds appropriated, "unless such contract or obligation is authorized by law." Attorney General Civiletti rendered an opinion on January 16, 1981, strictly construing the spending prohibitions contained in the Act unless such expenditures were authorized by law. *See* Opinion of the Attorney General, January 16, 1981.* *See also* Opinion of the Attorney General, April 25, 1980, 43 Op. Att'y Gen.__[4 Op. O.L.C. 16 (1980)]. Included within the expenditures permitted under the Act during a lapse in appropriations pursuant to these two opinions are those which involve the orderly termination of agency operations, and emergency expenditures which are necessary to secure the safety of human life or the protection of property. The Attorney General did not list specifically the obligations for which expenditures could be made after a lapse in appropriations; rather, he set forth "general principles" in his opinion letter, "[t]he precise application [of which] must, in each case, be determined in light of all circumstances surrounding a particular lapse in appropriations." Letter, January 16, 1981, *supra* at 3.

The Attorney General construed the "safety of human life [and] protection of property" clause of § 665(b) to require:

> [first,] some reasonable and articulable connection between the function to be performed and the safety of human life or the protection of property [and second] some reasonable likelihood that the safety of human life or the protection of property would be compromised, in some degree, by delay in the performance of the function in question.

*Id.* at 11. Application of these principles to the situation described in JMD's request[3] leads to the conclusion that a cash disbursement in an amount sufficient to permit the witnesses to return home, or, if travel is impracticable at that time, to secure overnight accommodations and meals, would be permitted under the Act.

Expenditures authorized as necessary to the "orderly termination of agency operations" may, in circumstances of extraordinary hardship, include the payment of obligations which arose prior to the lapse in appropriations. In the circumstances described by JMD, it seems clear that the obligation to reimburse the witnesses for *round trip* costs arose at the time of their departure from home, and that, having induced

---

*NOTE: The January 16, 1981, Opinion of the Attorney General, *Authority for the Continuance of Government Functioning During a Temporary Lapse in Appropriations,* appears in this volume at p. 1 *supra.* Ed.

[3] The particular situation described by JMD involved several witnesses who were ordered to appear in court on the morning of Monday, November 23, 1981. Appropriations authority lapsed at midnight, Friday, November 20, 1981, and continued through the late afternoon of November 23. The witnesses had not been notified prior to their arrival at the courthouse that the court would not be convened on Monday morning, had traveled a distance of some length, and had no money to return home.

their travel by court order, part of the orderly termination of the court's business involved making funds available for their return home or lodging in safe accommodations, if return that day is impractical. We do not mean to suggest that the "orderly termination of agency operations" exception may be applied to authorize payment of all witness fees or other obligations which arose prior to the appropriations hiatus—rather the totality of circumstances must be examined and evaluated in each case.

While it is clear that witnesses who are directed by court order to appear in federal courts during a lapse in appropriations have a valid claim against the United States for travel costs incurred in complying with the court's order, ordinarily, such disbursements may not be made until the Department's funding has resumed. *See New York Airways, Inc. v. United States,* 369 F.2d 743 (Ct. Cl. 1966). However, the particular witnesses described in JMD's request present a "hardship" case that, in our judgment, meets the requisite standard for emergency expenditures under § 665(b) set forth in Attorney General Civiletti's January 16, 1981, opinion. Where witnesses have been ordered to appear in court during a lapse in the Department of Justice's appropriation, and lack financial resources necessary to return home, we believe that there exists a sufficiently reasonable likelihood that the witnesses' safety would be compromised by not providing them the means to return home to warrant a cash disbursement for that purpose.

Because expenditures authorized under the Antideficiency Act are to be narrowly construed, our opinion is confined to the particular facts set forth in this case.

THEODORE B. OLSON
*Assistant Attorney General*
*Office of Legal Counsel*

431